```
              IN THE UNITED STATES DISTRICT COURT
                  FOR THE DISTRICT OF KANSAS


JOHN SANJEAN,

                      Plaintiff,

vs.                                      Case No. 11-1395-SAC

MICHAEL J. ASTRUE,
Commissioner of
Social Security,

                      Defendant.
```

MEMORANDUM AND ORDER

This is an action reviewing the final decision of the Commissioner of Social Security denying the plaintiff disability insurance benefits. The matter has been fully briefed by the parties.

**I.  General legal standards**

The court's standard of review is set forth in 42 U.S.C. § 405(g), which provides that "the findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." The court should review the Commissioner's decision to determine only whether the decision was supported by substantial evidence and whether the Commissioner applied the correct legal standards. Glenn v. Shalala, 21 F.3d 983, 984 (10th Cir. 1994). Substantial evidence requires more than a scintilla, but less than a preponderance, and is satisfied by

1

such evidence that a reasonable mind might accept to support the conclusion.  The determination of whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it really constitutes mere conclusion.  Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).  Although the court is not to reweigh the evidence, the findings of the Commissioner will not be mechanically accepted.  Nor will the findings be affirmed by isolating facts and labeling them substantial evidence, as the court must scrutinize the entire record in determining whether the Commissioner's conclusions are rational.  Graham v. Sullivan, 794 F. Supp. 1045, 1047 (D. Kan. 1992).  The court should examine the record as a whole, including whatever in the record fairly detracts from the weight of the Commissioner's decision and, on that basis, determine if the substantiality of the evidence test has been met.  Glenn, 21 F.3d at 984.

The Social Security Act provides that an individual shall be determined to be under a disability only if the claimant can establish that they have a physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity (SGA).  The claimant's physical or mental impairment or impairments must be of such severity that

they are not only unable to perform their previous work but cannot, considering their age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.  42 U.S.C. § 423(d).

The Commissioner has established a five-step sequential evaluation process to determine disability.  If at any step a finding of disability or non-disability can be made, the Commissioner will not review the claim further.  At step one, the agency will find non-disability unless the claimant can show that he or she is not working at a "substantial gainful activity."  At step two, the agency will find non-disability unless the claimant shows that he or she has a "severe impairment," which is defined as any "impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities."  At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled.  If the claimant's impairment does not meet or equal a listed impairment, the inquiry proceeds to step four, at which the agency assesses whether the claimant can do his or her previous work; unless the claimant shows that he or she cannot perform their previous work, they are determined not to be disabled.  If the claimant survives step four, the fifth and final step

requires the agency to consider vocational factors (the claimant's age, education, and past work experience) and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. Barnhart v. Thomas, 124 S. Ct. 376, 379-380 (2003).

The claimant bears the burden of proof through step four of the analysis. Nielson v. Sullivan, 992 F.2d 1118, 1120 (10th Cir. 1993). At step five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in the national economy. Nielson, 992 F.2d at 1120; Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993). The Commissioner meets this burden if the decision is supported by substantial evidence. Thompson, 987 F.2d at 1487.

Before going from step three to step four, the agency will assess the claimant's residual functional capacity (RFC). This RFC assessment is used to evaluate the claim at both step four and step five. 20 C.F.R. §§ 404.1520(a)(4), 404.1520(e,f,g); 416.920(a)(4), 416.920(e,f,g).

## II. History of case

On July 26, 2010, administrative law judge (ALJ) Mark R. Dawson issued his decision (R. at 12-21). Plaintiff alleges that he has been disabled since October 15, 2007 (R. at 12). Plaintiff is insured for disability insurance benefits through December 31, 2011 (R. at 14). At step one, the ALJ found that

plaintiff has not engaged in substantial gainful activity since the alleged onset date (R. at 14).  At step two, the ALJ found that plaintiff had the following severe impairments: gout, nephrolithiasis (kidney stones), diabetes, and obesity (R. at 14).  At step three, the ALJ determined that plaintiff's impairments do not meet or equal a listed impairment (R. at 16).  After determining plaintiff's RFC (R. at 16), the ALJ determined at step four that plaintiff is able to perform past relevant work as a telephone solicitor and a telecom systems analyst (R. at 21).  In the alternative, at step five, the ALJ found that even if plaintiff was unable to perform past relevant work, a finding of not disabled would be directed by application of Medical-Vocational Rule 201.25 (R. at 21).  Therefore, the ALJ concluded that plaintiff was not disabled (R. at 21).

**III.  Are the ALJ's RFC findings supported by substantial evidence?**

The ALJ found that plaintiff had the RFC to perform the full range of sedentary work, as defined in 20 C.F.R. § 404.1567(a) (R. at 16).  According to SSR 96-8p, the RFC assessment "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts...and nonmedical evidence."  The ALJ must explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.  The RFC assessment

must always consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the ALJ must explain why the opinion was not adopted. SSR 96-8p, 1996 WL 374184 at *7. SSR rulings are binding on an ALJ. 20 C.F.R. § 402.35(b)(1); Sullivan v. Zebley, 493 U.S. 521, 530 n.9, 110 S. Ct. 885, 891 n.9, 107 L. Ed.2d 967 (1990); Nielson v. Sullivan, 992 F.2d 1118, 1120 (10th Cir. 1993). When the ALJ fails to provide a narrative discussion describing how the evidence supports each conclusion, citing to specific medical facts and nonmedical evidence, the court will conclude that his RFC conclusions are not supported by substantial evidence. See Southard v. Barnhart, 72 Fed. Appx. 781, 784-785 (10th Cir. July 28, 2003). The ALJ's decision must be sufficiently articulated so that it is capable of meaningful review; the ALJ is charged with carefully considering all of the relevant evidence and linking his findings to specific evidence. Spicer v. Barnhart, 64 Fed. Appx. 173, 177-178 (10th Cir. May 5, 2003). It is insufficient for the ALJ to only generally discuss the evidence, but fail to relate that evidence to his conclusions. Cruse v. U.S. Dept. of Health & Human Services, 49 F.3d 614, 618 (10th Cir. 1995). When the ALJ has failed to comply with SSR 96-8p because he has not linked his RFC determination with specific evidence in the record, the court cannot adequately assess whether relevant evidence supports the

6

ALJ's RFC determination. Such bare conclusions are beyond meaningful judicial review. <u>Brown v. Commissioner of the Social Security Administration</u>, 245 F. Supp.2d 1175, 1187 (D. Kan. 2003).

On August 12, 2008, Dr. Vopat prepared a physical RFC assessment after reviewing the medical evidence (R. at 270-277). The ALJ accorded "great weight" to this opinion (R. at 20). Dr. Vopat opined that plaintiff could occasionally perform climbing ramps/stairs, balancing, stooping, kneeling, crouching, and crawling; Dr. Vopat further opined that plaintiff could never climb ladders/ropes/scaffolds. Dr. Vopat gave plaintiff these limitations because of his obesity (R. at 272).

The ALJ did not include these postural limitations in his RFC findings. Plaintiff notes in his brief that the ALJ did not include any of these postural limitations in his RFC findings, despite giving great weight to his opinions (Doc. 11 at 13). However, according to SSR 96-9p:

> Postural limitations or restrictions related to such activities as climbing ladders, ropes, or scaffolds, balancing, kneeling, crouching or crawling would not usually erode the occupational base for a full range of unskilled sedentary work significantly because those activities are not usually required in sedentary work.
>
> ………………………
>
> An ability to stoop occasionally; i.e., from very little up to one-third of the time, is

>           required in most unskilled sedentary
>           occupations…restriction to occasional
>           stooping should, by itself, only minimally
>           erode the unskilled occupational base of
>           sedentary work.

SSR 96-9p, 1996 WL 374185 at *7-8.

In his decision, the ALJ noted the postural restrictions set forth by Dr. Vopat, and stated that they would not significantly reduce the plaintiff's ability to perform a full range of sedentary work (R. at 20).  The ALJ's decision is in accordance with SSR 96-9p, as set forth above.  Therefore, the court finds no error by the exclusion of postural limitations from the RFC findings.

Plaintiff next argues that the ALJ "seemingly did not incorporate any limitations related to Sanjean's severe nephrolithiasis" (kidney stones) (Doc. 11 at 13).  In his assessment, Dr. Vopat referred to the renal or kidney stones as a slight impairment (R. at 277).  However, in his decision, the ALJ found that plaintiff's kidney stones constituted a severe impairment (R. at 14).  Plaintiff's brief indicates that the plaintiff testified to debilitating pain, including pain from the kidney stones, which would limit his ability to work (Doc. 11 at 14; Doc. 17 at 2).

The ALJ noted that the medical evidence indicated that plaintiff took significant pain medication, such as MS Contin, which would tend to minimize his pain levels relative to the

pain medications the plaintiff was taking previously (R. at 18). On March 12, 2008, plaintiff went to Dr. Graham, and complained that he was not getting good pain relief (R. at 296).  Dr. Graham prescribed MS Contin (R. at 296).  The medical records from Dr. Graham after that date do not indicate that plaintiff subsequently complained that he was not getting good pain relief (R. at 329-330, 336-337).

On July 10, 2008, four months after plaintiff was placed on new narcotic pain killers, a psychological evaluation was performed on the plaintiff by Dr. Neufeld, a psychologist.  Dr. Neufeld made the following findings under mental status:

> …His responses were articulate, precise and to the point…
>
> [plaintiff had] above average expectations in immediate recall.  He recalled two of three items after a brief time delay, suggesting mild problems in short term memory.  He was oriented in all spheres and appeared to have an excellent fund of general information about his environment.

(R. at 285).  Later, under his summary, Dr. Neufeld stated that "His cognitive skills appeared basically intact" (R. at 286). Dr. Adams, after citing to the report from Dr. Neufeld, opined that plaintiff's concentration, persistence and pace was only mildly impaired (R. at 266, 268).  The ALJ, relying on the report of Dr. Neufeld that showed only mild difficulties with short-term memory, found that plaintiff only had mild

limitations in concentration, persistence and pace (R. at 16). The ALJ could reasonably rely on the mental status examination of Dr. Neufeld to discount plaintiff's allegations of debilitating pain. The court will not reweigh the evidence or substitute its judgment for that of the Commissioner. Hackett v. Barnhart, 395 F.3d 1168, 1173 (10th Cir. 2005); White v. Barnhart, 287 F.3d 903, 905, 908, 909 (10th Cir. 2002). Therefore, the court finds no error in the ALJ's analysis of plaintiff's limitations resulting from kidney stones.

Plaintiff next complains that the ALJ erred by failing to include any restrictions regarding plaintiff's anxiety disorder. Plaintiff argues that the ALJ erred by not including in his RFC findings the opinion of Dr. Adams and Dr. Witt, two non-examining medical sources, that plaintiff had a moderate limitation in his ability to deal with the public (R. at 252-254, 249). The ALJ gave little weight to their opinions, and instead gave greater weight to the opinions of Dr. Neufeld, who performed a consultative examination on the plaintiff (R. at 15). Although Dr. Neufeld stated that plaintiff had mild to moderate agoraphobia,[1] he further indicated that no severe classic "panic" symptoms were noted. Dr. Neufeld also stated that plaintiff's anxiety level was "currently being moderated

---

[1] The essential features of agoraphobia is anxiety about being in places or situations from which escape might be difficult or embarrassing or in which help may not be available in the event of having a panic attack or panic-like symptoms. Diagnostic and Statistical Manual of Mental Disorders (DSM-IV-TR) (4th ed., text revision, American Psychiatric Association 2000 at 432-433).

fairly successfully with medication" (R. at 286).  Dr. Neufeld summarized his report by again noting that plaintiff had agoraphobic symptoms which made the trek to work difficult, but stated that "these appeared to be moderated sufficiently with anxiety medication and would appear to not significantly handicap employment" (R. at 286).

As noted above, the court will not reweigh the evidence or substitute its judgment for that of the Commissioner.  <u>Hackett v. Barnhart</u>, 395 F.3d 1168, 1173 (10th Cir. 2005); <u>White v. Barnhart</u>, 287 F.3d 903, 905, 908, 909 (10th Cir. 2002).  The opinion of an examining medical source is generally entitled to greater weight than the opinion of a non-examining medical source.  <u>Robinson v. Barnhart</u>, 366 F.3d 1078, 1084 (10th Cir. 2004).  Therefore, the ALJ could reasonably rely on the consultative examination of Dr. Neufeld, a consulting psychologist who examined the plaintiff, to discount the opinions of Dr. Witt and Dr. Adams, who did not treat or examine the plaintiff.

Plaintiff also noted that the ALJ failed to include a limitation opined by Dr. Witt, that plaintiff be limited to moderate and not complex instructions (R. at 249).  The ALJ did not include this limitation, stating that it is not supported by the findings of Dr. Neufeld or the record as a whole (R. at 15).  Given that neither Dr. Neufeld or Dr. Adams included such a

11

limitation, the ALJ had a reasonable basis for not including this limitation in the plaintiff's RFC findings.

**IV. Are the ALJ's credibility findings supported by substantial evidence?**

Credibility determinations are peculiarly the province of the finder of fact, and a court will not upset such determinations when supported by substantial evidence. However, findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings. Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995). Furthermore, the ALJ cannot ignore evidence favorable to the plaintiff. Owen v. Chater, 913 F. Supp. 1413, 1420 (D. Kan. 1995).

When analyzing evidence of pain, the court does not require a formalistic factor-by-factor recitation of the evidence. So long as the ALJ sets forth the specific evidence he relies on in evaluating the claimant's credibility, the ALJ will be deemed to have satisfied the requirements set forth in Kepler. White v. Barnhart, 287 F.3d 903, 909 (10th Cir. 2002); Qualls v. Apfel, 206 F.3d 1368, 1372 (10th Cir. 2000). Furthermore, the ALJ need not discuss every relevant factor in evaluating pain testimony. Bates v. Barnhart, 222 F. Supp.2d 1252, 1260 (D. Kan. 2002). An ALJ must therefore explain and support with substantial evidence which part(s) of claimant's testimony he did not believe and

why.  McGoffin v. Barnhart, 288 F.3d 1248, 1254 (10th Cir. 2002).  It is error for the ALJ to use standard boilerplate language which fails to set forth the specific evidence the ALJ considered in determining that a claimant's complaints were not credible.  Hardman v. Barnhart, 362 F.3d 676, 679 (10th Cir. 2004).  On the other hand, an ALJ's credibility determination which does not rest on mere boilerplate language, but which is linked to specific findings of fact fairly derived from the record, will be affirmed by the court.  White, 287 F.3d at 909-910.

The court will not reweigh the evidence or substitute its judgment for that of the Commissioner.  Hackett v. Barnhart, 395 F.3d 1168, 1173 (10th Cir. 2005); White v. Barnhart, 287 F.3d 903, 905, 908, 909 (10th Cir. 2002).  Although the court will not reweigh the evidence, the conclusions reached by the ALJ must be reasonable and consistent with the evidence.  See Glenn v. Shalala, 21 F.3d 983, 988 (10th Cir. 1994)(the court must affirm if, considering the evidence as a whole, there is sufficient evidence which a reasonable mind might accept as adequate to support a conclusion).  The court can only review the sufficiency of the evidence.  Although the evidence may support a contrary finding, the court cannot displace the agency's choice between two fairly conflicting views, even though the court may have justifiably made a different choice

had the matter been before it de novo.  <u>Oldham v. Astrue</u>, 509 F.3d 1254, 1257-1258 (10th Cir. 2007).

The ALJ discounted plaintiff's credibility because plaintiff was able to work at substantial gainful activity levels in 2006 and 2007 when he was seeing the doctor more frequently and having more kidney stones (R. at 18).  Plaintiff testified that he has had 217 kidney stones since 1987-1988, when he was 18 or 19 years old (R. at 41).  Plaintiff further testified that before taking medication, he was passing from 7-10 kidney stones a month, but is now down to about 1 a month (R. at 41-42).  From October 2005 through March 2006 he passed approximately 20 kidney stones (R. at 320).  However, despite having so many kidney stones initially, he was able to work at Sprint from 1989-2003 (R. at 32), and held a number of different jobs until November 2007 (R. at 158).  Plaintiff asserts that he is disabled, and therefore has not engaged in substantial gainful activity, since October 15, 2007 (R. at 12).

When a claimant's impairments were at approximately the same level of severity prior to the date the claimant alleged they became disabled, and those impairments did not prevent the claimant from working in the past, and the nature and severity of these impairments had not significantly changed, the ALJ could reasonably conclude that claimant's condition would not prevent him/her from performing their past relevant work.  <u>Wall</u>

14

v. Astrue, 561 F.3d 1048, 1068 (10th Cir. 2009).  In the case before the court, there is no evidence that plaintiff's kidney stones have become worse since he alleged he became disabled; in fact, the evidence establishes that the frequency of kidney stones has declined.  The ALJ could reasonably rely on plaintiff's ability to work when plaintiff suffered from more frequent kidney stones to discount his allegations of disabling pain due to the kidney stones after the alleged onset of disability.

**V.  Did the ALJ err in his step four analysis?**

At step four, the ALJ found that plaintiff is capable of performing past relevant work as a telephone solicitor and telecom systems analyst.  The ALJ determined that this work does not require the performance of work-related activities precluded by plaintiff's RFC (that plaintiff could perform the full range of sedentary work) (R. at 21, 16).

At step four, the ALJ is required by Social Security Ruling (SSR) 82-62 to make findings of fact regarding: 1) the individual's residual functional capacity, 2) the physical and mental demands of prior jobs or occupations, and 3) the ability of the individual to return to the past occupation given his or her residual functional capacity.  Henrie v. United States Dep't of HHS, 13 F.3d 359, 361 (1993).  Thus, at the third or final phase of the analysis, the ALJ determines whether the claimant

15

has the ability to meet the job demands found in phase two despite the mental and/or physical limitations found in phase one. At each of these three phases, the ALJ must make specific findings. Frantz v. Astrue, 509 F.3d 1299, 1303 (10th Cir. 2007); Winfrey v. Chater, 92 F.3d 1017, 1023 (10th Cir. 1996).[2] An ALJ can comply with these requirements if he quotes the VE's testimony with approval in support of his own findings at phases two and three of the step four analysis. Doyal v. Barnhart, 331 F.3d 758, 760-761 (10th Cir. 2003).[3] When the ALJ fails to make

---

[2] In Winfrey, the court noted that the Secretary glossed over the absence of the required ALJ findings by relying on the testimony of the vocational expert (VE) that plaintiff could meet the mental demands of his past relevant work, given his mental limitations as found by the ALJ. The court stated that this practice of delegating to a VE many of the ALJ's fact finding responsibilities at step four appears to be of increasing prevalence and is to be discouraged. The court went on to say as follows:

> Requiring the ALJ to make specific findings on the record at each phase of the step four analysis provides for meaningful judicial review. When, as here, the ALJ makes findings only about the claimant's limitations, and the remainder of the step four assessment takes place in the VE's head, we are left with nothing to review...a VE may supply information to the ALJ at step four about the demands of the claimant's past relevant work...[but] the VE's role in supplying vocational information at step four is much more limited than his role at step five...Therefore, while the ALJ may rely on information supplied by the VE at step four, the ALJ himself must make the required findings on the record, including his own evaluation of the claimant's ability to perform his past relevant work.

Winfrey, 92 F.3d at 1025.

[3] The ALJ's findings in Doyal were as follows:

> The vocational expert testified that the claimant's past relevant work as a housecleaner and sewing machine operator would be classified as light and unskilled, and her past relevant work as an activities director would be classified as light and semiskilled.... The vocational expert indicated that the claimant's past relevant work as a housecleaner and sewing machine operator did not require lifting more than 20 pounds, walking for prolonged periods, or performing tasks requiring bilateral normal grip strength.

Doyal, 331 F.3d at 760. The ALJ found that plaintiff could perform past relevant work as a housecleaner and a sewing machine operator. 331 F.3d at 761. As noted above, the ALJ cited with approval the testimony of the vocational expert concerning the physical demands of the 2 past jobs which the ALJ found that the claimant could still perform.

findings at phase two of step four regarding the physical and/or mental demands of plaintiff's past work, the case will be remanded for a proper step four analysis. Bowman v. Astrue, 511 F.3d 1270, 1271-1273 (10th Cir. 2008); Frantz v. Astrue, 509 F.3d at 1303-1304; Kilpatrick v. Astrue, 559 F. Supp.2d 1177, 1182-1185 (D. Kan. 2008)(Belot, D.J.). However, when the ALJ makes proper findings at step five, any error at step four will be deemed harmless error. Martinez v. Astrue, 316 Fed. Appx. 819, 824 (10th Cir. Mar. 19, 2009); see Murrell v. Shalala, 43 F.3d 1388, 1389-1390 (10th Cir. 1994).

At phase one, the ALJ must determine plaintiff's RFC. The ALJ found that plaintiff has the RFC to perform the full range of sedentary work as defined in 20 C.F.R. § 404.1567(a) (R. at 16). Because this case was decided at step four of the sequential analysis, the burden is on the claimant to show that his impairment(s) render him unable to perform his past relevant work. Henrie, 13 F.3d at 360; Castine v. Astrue, 334 Fed. Appx. 175, 179 (10th Cir. June 26, 2009).

Ella Dohring, the vocational expert, testified that plaintiff's past relevant work as a telephone solicitor was sedentary work (R. at 52).[4] Plaintiff has failed to establish that he is unable to perform a full range of sedentary work.

---

[4] Although the VE did not identify the nature of the work of a telecom systems analyst, a systems analyst is identified as sedentary work in the Dictionary of Occupational Titles (DICOT), DICOT 030.167-014, 1991 WL 646547.

17

The remaining phases of step four require the ALJ to determine the physical and mental demands of the prior job, and then to determine the ability of the claimant to return to the prior job given his or her RFC.  The ALJ found that plaintiff was capable of performing past relevant work because this work did not require the performance of activities precluded by plaintiff's RFC.  In other words, at phase two, the ALJ found that plaintiff's past work was considered sedentary exertional work.  At phase three, the ALJ concluded that plaintiff could perform her past work given her RFC, which limited her to sedentary work (R. at 21).  On these facts, the court finds that substantial evidence supports the ALJ's step four findings.  See Qualls v. Astrue, 2011 WL 2600546 at *6-7 (10th Cir. July 1, 2011)(no error in step four analysis when claimant found capable of performing a full range of light work, with no other limitations, and ALJ found that plaintiff could return to prior work which was light work); Parise v. Astrue, 2009 WL 3764119 at *4-5 (D. Kan. Nov. 10, 2009, aff'd, 2010 WL 4846097 at *2-3 (10th Cir. Nov. 30, 2010)(same).

In the alternative, the ALJ found that even if plaintiff could not perform past relevant work, a finding of not disabled at step five would be directed by application of Medical-Vocational Rule 201.25 (R. at 21).  At step five, the burden shifts to the Commissioner to show that the claimant can perform

other work that exists in the national economy.  <u>Nielson</u>, 992 F.2d at 1120; <u>Thompson v. Sullivan</u>, 987 F.2d 1482, 1487 (10th Cir. 1993).  To meet this burden, the Commissioner may rely on the Medical-Vocational Guidelines (grids). 20 C.F.R. Part 404, Subpt. P, App. 2.  <u>Williams v. Bowen</u>, 844 F.2d 748, 751 (10th Cir. 1988).  The grids contain tables of rules which direct a determination of disabled or not disabled on the basis of a claimant's RFC category, age, education, and work experience. <u>Thompson</u>, 987 F.2d at 1487.

Plaintiff does not dispute the alternative finding at step five that a finding of not disabled would be directed by application of Medical-Vocational Rule 201.25   Thus, even if the ALJ had erred in his step four analysis, any such error would be harmless error in light of the fact that the ALJ found at step five that plaintiff would not be disabled, and plaintiff does not contest or dispute that finding.

IT IS THEREFORE ORDERED that the judgment of the Commissioner is affirmed pursuant to sentence four of 42 U.S.C. § 405(g).

Dated this 2nd day of January, 2013, Topeka, Kansas.

<pre>
                              s/ Sam A. Crow_____
                              Sam A. Crow, U.S. District Senior Judge
</pre>